PEOPLE v KUSOWSKI

OPINION OF THE COURT

1. CRIMINAL LAW—EVIDENCE—INVOLUNTARY STATEMENTS.

Evidence secured as a result of involuntary statements made by a defendant to the police is inadmissible at the defendant's trial.

2. CRIMINAL LAW—EVIDENCE—WITNESSES—IDENTITY OF WITNESSES— INVOLUNTARY STATEMENTS.

Any witness whose identity is discovered as a result of involuntary statements made by a defendant, and any physical evidence developed therefrom, may not be admitted at the defendant's trial.

3. WITNESSES—CRIMINAL LAW—IDENTITY OF WITNESSES—ILLEGALLY OBTAINED STATEMENTS.

A witness whose identity is discovered as a result of statements illegally obtained from a defendant may not be allowed to testify at the defendant's trial.

DISSENT BY M. J. KELLY, J.

4. WITNESSES—IDENTITY OF WITNESSES—TESTIMONY—EXCLUSION OF TESTIMONY.

*A bare finding that the identity of a witness was learned by illegal means is insufficient to warrant the exclusion of the witness's testimony.*

5. WITNESSES—EXCLUSIONARY RULE.

*The exclusionary rule, forbidding the use of illegally acquired evidence, should not be applied to witnesses in the same way that it is applied to verbal statements and physical evidence.*

REFERENCES FOR POINTS IN HEADNOTES
[1] 29 Am Jur 2d, Evidence § 529.
[2] 21 Am Jur 2d, Criminal Law § 33.
[3] 29 Am Jur 2d, Evidence § 408.
[4–8] 29 Am Jur 2d, Evidence § 408 *et seq.*

6. WITNESSES—CRIMINAL LAW—EXCLUSIONARY RULE.

*A court must consider the following factors in order to determine whether the exclusionary rule, forbidding the use of illegally acquired evidence, should be applied to a witness: (1) how great a part the particular manifestation of "individual human personality" played in the ultimate receipt of the testimony in question; (2) whether there are indications in the record that mere knowledge of the witness's identity would not inevitably guarantee that his testimony would be favorable to the prosecution; and (3) whether the witness might eventually have voluntarily gone to the police even without their knowing his identity.*

7. CRIMINAL LAW—EVIDENCE—FRUIT OF POISONED TREE—ILLEGAL CONFESSIONS.

*The fruit of the poisoned tree doctrine is operative to exclude evidence, assuming an illegal confession, where a causal chain is shown to exist from the primary illegality to the procurement of and the effect upon the substance of the evidence sought to be employed.*

8. WITNESSES—CRIMINAL LAW—IDENTITY OF WITNESSES—ILLEGAL ADMISSIONS—EXCLUSION OF WITNESSES.

*Several questions should be answered before ruling on a motion to suppress a witness's testimony where the identity of the witness was discovered through admissions obtained illegally from the defendant: (1) if it be assumed that no statement had been made by the defendant to the police, would the witness have come forward voluntarily; (2) if not, would the police have reasonably been expected to learn the witness's identity by an independent investigation; and (3) apart from revealing the witness's identity, to what use, if any, was the illegally obtained information put in procuring the testimony of the witness and in affecting the substance thereof.*

Appeal from Saginaw, Fred J. Borchard, J. Submitted June 10, 1976, at Grand Rapids. (Docket No. 25279.) Decided October 19, 1976. Leave to appeal applied for.

John Kusowski was convicted of murder in the second degree. Defendant appeals. Reversed.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *E. Brady Denton,*

Prosecuting Attorney, and *Peter C. Jensen,* Assistant Prosecuting Attorney, for the people.

*H. William Martin,* for defendant.

Before: R. B. Burns, P. J., and M. J. Kelly and S. S. Hughes,* JJ.

R. B. Burns, P. J. Defendant was convicted by a jury of murder in the second degree, MCLA 750.317; MSA 28.549. He appeals and we reverse.

Defendant was interrogated by police officers prior to his arrest. He informed the police that he had gone directly from the house of the deceased to the room of his friends Bob Sovine and Dick Ban. As a result of his statement the police interviewed Sovine and Ban.

Prior to trial defendant moved to suppress from evidence any statements made by him to the police, claiming they were illegally obtained. The trial judge granted the motion.

At trial defendant moved to prohibit the people from using Sovine and Ban as witnesses on the basis that their identities were obtained by the defendant's illegal admissions. The trial judge denied the motion and permitted Sovine and Ban to testify.

In *People v Robinson,* 48 Mich App 253, 260; 210 NW2d 372, 376 (1973), *lv den,* 390 Mich 793 (1973), this Court stated:

"We are therefore compelled to agree with the defendant that any evidence secured as a result of his involuntary statements is inadmissible. Any witness whose identity was discovered as a result of those

* Former circuit judge, sitting on the Court of Appeals by assignment pursuant to Const 1963, art 6, § 23 as amended in 1968.

statements, or any physical evidence developed therefrom, may not be admitted upon defendant's trial."

It was error for the trial judge to admit the testimony of Sovine and Ban.

Reversed and remanded for a new trial.

S. S. HUGHES, J., concurred.

M. J. KELLY, J. *(dissenting).* I do not believe that the fact that the identities of the witnesses Bob Sovine and Dick Ban were revealed by means of the defendant's illegally obtained admissions is sufficient to warrant exclusion of the witnesses' testimony.

It does seem at first glance that this question was settled by *People v Robinson,* 48 Mich App 253, 260; 210 NW2d 372, 376 (1973), *lv den,* 390 Mich 793 (1973):

"We are therefore compelled to agree with the defendant that any evidence secured as a result of his involuntary statements is inadmissible. Any witness whose identity was discovered as a result of those statements, or any physical evidence developed therefrom, may not be admitted upon defendant's trial."

However, I do not believe that the exclusionary rule should be applied to witnesses in the same way that it is applied to verbal statements and physical evidence. I would concur in the view expressed by this Court in the case of *People v Tucker,* 19 Mich App 320, 327–329; 172 NW2d 712, 716–717 (1969):

" 'In each case the court must determine how great a part the particular manifestation of "individual human personality" played in the ultimate receipt of the testimony in question. Indications in the record that mere

knowledge of the witness' identity would not inevitably guarantee that his testimony would be favorable to the prosecution; that the witness might eventually have voluntarily gone to the police even without their knowing his identity; that his testimony has remained unchanged from the start—all are relevant factors to be considered in determining the final outcome.' (Citation omitted.)

* * *

" 'In our opinion, assuming an illegal confession, for the fruit of the poisoned tree doctrine to be operative, a causal chain must be shown to exist from the primary illegality to the procurement of and the effect upon the substance of the evidence sought to be employed. A bare finding that the identity of witnesses was learned by illegal means is insufficient to warrant exclusion. (Citations omitted.)

" 'Before determining the instant motion to suppress, several questions should have been answered: (1) if it be assumed that no statement had been made by defendant to the police, would Cather and O'Connor have come forward voluntarily; (2) if not, would the police have reasonably been expected to learn their identity by an independent investigation; and (3) apart from revealing their identity, to what use, if any, was the illegally obtained information put in procuring the testimony of the witnesses and in affecting the substance thereof.' "

Although the U. S. Supreme Court did not address itself to this precise question it did affirm Tucker's conviction in *Michigan v Tucker,* 417 US 433; 94 S Ct 2357; 41 L Ed 2d 182 (1974).

I do not believe the testimony of such witnesses should be excluded for the following reasons: (1) both witnesses were good friends of the defendant and lived with him at the county home; (2) because of the close relationship between the defendant and the witnesses, it is likely that the police would have discovered these witnesses in their investiga-

tions; and (3) it seems probable that the witnesses would have come forward to the police.

In his second assignment of error, the defendant claims that the trial judge's instruction on intoxication was erroneous since it failed to inform the jury that the burden was on the people to show that he was not intoxicated at the time the crime was committed. An examination of the record indicates that the trial judge gave a separate and correct instruction on the burden of proof, charging that it was the prosecution's burden to prove every element of the offense beyond a reasonable doubt.

Defendant finally contends that the trial court erred in refusing to give a requested instruction on the offense of manslaughter. We do not address ourselves to this issue. Since the defendant will be retried pursuant to the majority opinion and in view of the confusion as to the retroactive or prospective effect of *People v Ora Jones,* 395 Mich 379; 236 NW2d 461 (1975), I suggest to the trial judge that, if on retrial the defendant requests an instruction on manslaughter as he did before, the court give such an instruction.

On the basis of the issue dealt with by the majority, I would not suppress the witnesses' testimony.